UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARLOS VIVANCO and ELIA GLORIA MONTEMAYOR VIVANCO, <br><br> Plaintiffs <br><br> vs. <br><br> BIOMET, INC., <br><br> Defendant | CAUSE NO. 3:03-CV-834 RM |

OPINION AND ORDER

Biomet, Inc., an Indiana corporation with its principal place of business in Warsaw, Indiana, asks this court to dismiss the complaint of Carlos Vivanco and his widow, Elia Gloria Montemayor Vivanco, on the grounds of *forum non conveniens*. Mrs. Vivanco is a citizen and resident of San Pedro Garza Carcia, Nuevo Leon, Mexico. Mr. Vivanco died December 5, 2003—less than one month after this claim was filed—and the executor of his estate is Hernan Jose Montemayor Gonzalez, also a citizen and resident of San Pedro Garza Carcia, Nuevo Leon, Mexico.[1] Mr. Vivanco underwent knee replacement surgery in Mexico during which he received an artificial knee that was manufactured in Indiana by Biomet. The Vivancos' complaint alleges they have suffered damages because the artificial knee was defective. Mr. Vivanco's estate seeks damages based on his

---

1 Mr. Vivanco's interests are now represented by his estate, but for the sake of simplicity the court at times refers to the plaintiffs simply as "the Vivancos."

personal injuries, pain and suffering, emotional distress, medical expenses, lost wages, and diminished earning potential. Mrs. Vivanco asks for damages based on loss of consortium. The court has jurisdiction based on the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332.

Under the doctrine of *forum non conveniens* "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties, and the ends of justice." Kamel v. Hill-Rom Co., 108 F.3d 799, 802 (7th Cir. 1997), *citing* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). The first step in the *forum non conveniens* analysis is to determine whether there is an adequate alternative forum in which the case may be heard. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22 (1981). "An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction." Kamel v. Hill-Rom, 108 F.3d at 803, *citing* Piper Aircraft Co. v. Reyno, 454 U.S. at 254. Biomet has submitted the affidavit of its in-house corporate counsel, Millard Plumlee, consenting to the jurisdiction of any Mexican court in which the plaintiffs may chose to file this suit and agreeing to waive any statute of limitations which may apply to such a filing. Mr. Plumlee's affidavit also states that the plaintiffs filed a lawsuit against Biomet in Mexico in 2004 (after commencing the present suit in this court). He says that neither he nor anyone else at Biomet was aware of the Mexican lawsuit, and that the Mexican suit was dismissed on March 3, 2004.

Biomet also submits the affidavit of Carlos G. de la Garza Santos, who has

2

practiced commercial and civil law in Mexico since 1975 and holds three law degrees. He earned one of these degrees in Mexico, another in the United States, and another in France. Mr. Santos's education and experience qualify him to offer expert opinion testimony on the subject of Mexican law. Mr. Santos's affidavit includes several statements bearing directly on the availability and adequacy of a Mexican forum for this litigation. He states that the Mexican court dismissed the Vivancos' Mexican lawsuit on March 3, 2004 for two reasons: (1) the Mexican court believed it lacked personal jurisdiction over Biomet because Biomet is located in a foreign country, and (2) Mr. Vivanco's estate didn't attach to the Mexican lawsuit "certain mandatory information, which could have easily been provided."

As to this second reason for dismissal, Mr. Santos's affidavit goes on to say that any "practicing Mexican attorney should know to provide this information" and that in his opinion "this information was not provided because the Estate of Carlos Vivanco wanted the Mexican Court to reject the Mexican lawsuit." Mr. Santos also states that with Biomet's consent, the perceived jurisdictional problem is removed, and Biomet's waiver overcomes any statute of limitations problems.

The plaintiffs are residents and citizens of Mexico, so they naturally fall within the personal jurisdiction and process of a Mexican court. The Vivancos offer nothing to refute the expert opinions expressed in Mr. Santos's affidavit, so the court finds there is an available forum for the Vivancos' suit in Mexico.

An alternative forum must also be adequate. *See* Piper Aircraft v. Reyno,

3

454 U.S. at 254 n. 22. "An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." Kamel v. Hill-Rom, 108 F.3d at 803, *citing* Piper Aircraft v. Reyno, 454 U.S. at 254. Mr. Santos's affidavit says that if the allegations of the complaint are proven both "the Estate of Carlos Vivanco and Mr. Vivanco's widow, Elia Gloria Montemayor Vivanco, would have legal remedies in Mexico under Mexican law with the Mexican legal system." He concludes that "despite the fact that the Plaintiffs filed the Mexican lawsuit and the Mexican Court rejected it, the Plaintiffs still have an adequate remedy against Biomet, Inc., if they are able to prove that their injuries were caused by the negligence of Biomet, Inc. in its design and manufacture of a defective product."

The plaintiffs submit nothing to contradict Mr. Santos's affidavit. Instead, they contend that Mr. Santos says nothing of the viability of Mrs. Vivanco's loss of consortium claims in the Mexican court. The court disagrees. Although the affidavit doesn't specifically discuss the loss of consortium claim, it is most reasonably understood to say that both the claims of the estate and of Mrs. Vivanco can proceed in the Mexican court. Mr. Santos expressly states that both the estate and Mrs. Vivanco would have legal remedies in Mexico under Mexican law. The final paragraph of the affidavit contains Mr. Santos's opinion that "the Plaintiffs still have an adequate remedy against Biomet, Inc., if they are able to prove that their injuries and damages were caused by the negligence of Biomet, Inc. in its design and manufacture of a defective product." On this record, a Mexican court provides a forum that is both available and adequate for the

4

estate's claims and Mrs. Vivanco's claims.

Because an adequate alternate forum exists, the court balances the private and public interest factors relevant to the *forum non conveniens* analysis. Kamel v. Hill-Rom, 108 F.3d at 803. When plaintiffs choose to litigate in their home forum, there exists a strong presumption in favor of their choice of forum. This presumption is founded on the logic that when plaintiffs choose their home forum it is reasonable to assume that their choice is convenient. Id., *citing* Piper Aircraft v. Reyno, 454 U.S. at 256. When foreign plaintiffs choose a United States court this logic does not hold, so their choice of forum receives less deference. Kamel v. Hill-Rom, 108 F.3d at 803. The court affords minimal deference to the Vivancos' selection of an American forum as it balances the private and public interest factors.

The private interest factors "include the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises, if necessary; and all other practical problems that make trial of a case easy, efficient and economical." Kamel v. Hill-Rom, 108 F.3d at 803, *citing* Gulf Oil Corp. v. Gilbert, 330 U.S. at 508.

There are sources of proof located in this district dealing with the manufacture of the implant, and sources of proof in Mexico dealing with Mr. Vivanco's medical care (including installation of the artificial knee) and damages suffered by both Mr. and Mrs. Vivanco. Biomet controls the sources of proof

5

regarding the manufacture of the artificial knee, and with its consent to the jurisdiction of a Mexican court, such a court should have ready access to these sources of proof. In contrast, sources of proof regarding Mr. Vivanco's medical care and damages, and any potential third-party defendants are almost all in Mexico[2], beyond reach of this court's compulsory process. The Vivancos offer no assurances that the Mexican witnesses would submit voluntarily to depositions, cooperate with discovery requests, or testify at trial were the case heard in an American court. The Vivancos suggest there is a possibility they might need to view the premises of Biomet's Indiana facilities, but the court doesn't see how selection of an Indiana forum or a Mexican forum would affect the cost or convenience of such a viewing. Either way, attorneys and experts would need to travel to Warsaw, Indiana and spend time inspecting the facilities. On balance, the ease of accessing sources of proof favors selecting a Mexican forum where the court could exercise compulsory process over almost all of the nonparty witnesses. Biomet's stipulation to a Mexican court's jurisdiction ensures that its employees would be available to assist with discovery in a Mexican lawsuit.

The cost of obtaining the testimony of witnesses also favors Biomet's request that the case be handled in Mexico. Those of the Vivancos' witnesses that can establish Mr. Vivanco's injury and the Vivancos' damages will have much shorter distances to travel if the suit is heard in Mexico. Biomet will have the burden of

---

[2] The Vivancos identify one anticipated witness, an expert in metallurgy, who is a resident of Texas.

transporting its witnesses greater distances to appear at proceedings in Mexico, but it is Biomet that asks for the trial in Mexico. Biomet asserts that it might need to implead third-party defendants, and that such defendants would likely be Mexican residents and therefore beyond this court's jurisdiction. This would be a serious problem, but at this point it is only a potential, speculative one that has little bearing on the balancing of private interest factors. The Vivancos say they will have to hire an expert familiar with American manufacturing standards, and that presentation of such expert evidence would be much easier in an American rather than Mexican court. Perhaps so, but by the same logic the expert testimony of Mr. Vivanco's Mexican doctors could likely be presented more easily to a Mexican court than to this American one.

On balance, the private interest factors weigh in favor of a Mexican forum, primarily because of the need to ensure the availability of compulsory process over necessary witnesses. Biomet's voluntary submission to Mexican jurisdiction essentially solves that problem if the case is tried in Mexico.

The public factors to be balanced "include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Kamel v. Hill-Rom, 108 F.3d at 803, *citing* Piper Aircraft v. Reyno, 454 U.S. at 241 n.6.

Choice of law plays an important part in balancing the public interest factors. A federal court exercising its diversity jurisdiction applies the choice of law principles of the state in which it sits. Coldwell Banker & Co. v. Karlock, 686 F.2d 596, 600 (7th Cir. 1982), *citing* Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Both parties agree that Simon v. United States, 805 N.E. 2d 798 (Ind. 2004), controls the choice of law here. Biomet says that Simon and other Indiana authorities call for the application of *lex loci delicti* (the law of the place of the harm), and concludes that the place of the harm was Mexico. *See* Simon v. United States, 805 N.E. 2d at 805 ("the presumption is that the traditional *lex loci delicti* rule . . . will apply.").

The Vivancos agree that Indiana courts generally apply *lex loci delicti*, but they argue that Simon carves out an exception for situations where the place of the tort bears little connection to the legal action. Id. ("If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, 'such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered.'"). Simon v. United States, 805 N.E. 2d at 805, *quoting* Hubbard Mfg. Co. v. Greeson, 515 N.E. 2d 1071, 1073-1074 (Ind. 1987), *citing* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)). The Indiana Supreme Court's approach in Simon permits this court to consider Hubbard's alternative choice of law factors only if the location of the tort is insignificant to the action.

The place of a tort is "where the last event necessary to make the [defendant] liable occurred." Simon v. United States, 805 N.E. 2d at 805. Simon involved a fatal plane crash in Kentucky allegedly precipitated by an erroneous FAA chart published in Washington, D.C., and by negligent air traffic controllers in Indianapolis, Indiana. The court concluded that the last event necessary to make the defendant liable "was the injury, which occurred when the plane crashed in Kentucky and the decedents died. Consequently, under *lex loci delicti*, Kentucky law would apply." Simon v. United States, 805 N.E. 2d at 806 (footnote omitted). The court then determined that Simon was "one of the rare cases in which the place of the tort is insignificant" because the "negligence at issue occurred in Indiana and the District of Columbia, and none of the victims or the parties are residents [sic] of Kentucky (except to the extent that the United States is a 'resident' of every state)." Simon v. United States, 805 N.E. 2d at 806.

The last event necessary to make Biomet liable to the Vivancos was the alleged malfunctioning of the artificial knee which occurred in Mexico. The Vivancos allege Biomet negligently designed and manufactured the knee in Indiana, but as Simon makes clear, the place of the tort is where the plaintiff is harmed, not where the defendant's alleged negligence occurs. *See* Simon v. United States, 805 N.E. 2d at 806; *see also* In the Matter of Bridgestone/Firestone, Inc., 288 F.3d 1012, 1016 (7th Cir. 2002) ("Has Indiana since [the Hubbard decision in] 1987 applied the law of a state where a product was designed, or promotional materials drafted, to a suit arising out of an injury in Indiana? As far as we can

9

tell, the answer is no—not even once, and the state has had plenty of opportunities.").

The next question is whether this is one of the "rare" cases where the place of the tort, Mexico, "bears little connection to the legal action." Simon v. United States, 805 N.E. 2d at 806, *quoting* Hubbard Mfg. Co. v. Greeson, 515 N.E. 2d at 1074. It is not. Biomet manufactured the artificial knee in Indiana, but the Vivancos were residents and citizens of Mexico, Mr. Vivanco's knee replacement surgery took place in Mexico, and Mr. Vivanco was injured in Mexico when the knee allegedly malfunctioned. There is no suggestion that the Vivancos had any contact with Biomet in Indiana before Mr. Vivanco's injury; their contact with Biomet was mediated by Mr. Vivanco's doctors and occurred exclusively in Mexico. The record also indicates that all of Mr. Vivanco's doctors and care-givers remain in Mexico, and that all pertinent medical records are located in Mexico. The location of the injury, Mexico, is not insignificant to this action. Accordingly, Indiana's *lex loci delicti* rules dictate that Mexican law applies to the Vivancos' tort claims because they arise out of alleged injuries suffered in Mexico. Simon v. United States, 805 N.E. 2d at 805.

Application of Mexican law tips two of the public interest factors heavily in favor of a Mexican forum: the interest in having the trial of a diversity case in a forum that is at home with the governing law; and the avoidance of unnecessary problems in the application of foreign law. A Mexican court undoubtedly is more familiar with Mexican law than is this court, and the problems that could arise

10

from selecting an American forum certainly appear unnecessary.

No party suggests that administrative difficulties stemming from court congestion favor either American or Mexican jurisdiction. The court has no information about the relative congestion of the Mexican docket, so this factor is neutral. The factor relating to the unfairness of burdening citizens in an unrelated forum with jury duty tips somewhat in favor of a Mexican forum. Given that the plaintiffs who seek vindication of their rights are Mexican, and that they were injured in Mexico, the Mexican community appears to have a stronger interest in this litigation than does Indiana. To be sure, Indiana has some interest in regulating the quality and safety of products produced within its borders, but Mexico has an even stronger interest in ensuring that medical devices sold to Mexican hospitals and surgically implanted into Mexican citizens are safe and effective. Finally, the local interest in having localized disputes decided at home favors a Mexican forum. This dispute arose because of an injury that occurred in Mexico, to Mexican citizens. As discussed in the choice of law analysis above, the Mexican community has significant links to this case. The true locality of the dispute is Nuevo Leon, Mexico, not Indiana, U.S.A. The public interest factors favor a Mexican forum because Mexico's interests in providing a forum for redress of injuries to its citizens and in properly applying Mexican law outweigh the interests of Indiana in this matter.

For all the reasons stated above the court finds that Mexico is an adequate alternative forum to hear this case, and that the private and public factors both

balance in favor of a Mexican forum. Accordingly, given Biomet's agreement to submit to Mexican jurisdiction, its Motion to Dismiss on the grounds of *forum non conveniens* [docket no. 17] is GRANTED and the Complaint of Carlos Vivanco's estate and of Elia Gloria Montemayor Vivanco is DISMISSED.

    SO ORDERED.

    ENTERED:   May 9, 2005

                                        /s/ Robert L. Miller, Jr.
                                        Chief Judge
                                        United States District Court